## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEORA TUCKER,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:21-cv-01215-WB** |
| **TRANS UNION, LLC, et al.** | |
| **Defendants.** | |

## DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT

Defendant Experian Information Solutions, Inc. ("Experian") hereby submits this Memorandum of Law in Support of its Motion to Enforce Settlement Agreement, and states as follows:

### I.  INTRODUCTION

Experian and Plaintiff Leora Tucker settled this case on May 12, 2021—more than six months ago—but Plaintiff refuses to sign Experian's draft settlement agreement.  Shortly after settling the case in principle, Experian circulated a draft settlement agreement to Plaintiff.  Plaintiff executed the agreement, agreeing to a vast majority of the agreement.  However, she made minor changes to the document.  These changes were either not material or were contradictory to the agreement the parties reached.  Plaintiff now refuses to sign the agreement and will not discuss her issues with Experian.

A party, however, "may not whimsically renege on her promise and refuse to uphold her end of the bargain" once she agrees to settle the case.  *Anderson v. U.S. Postal Serv.*, No. Civ. A. 97-3112, 1998 WL 67542, at *1 (E.D. Pa. Feb. 19, 1998).  This is because the settlement agreement "is still binding, even if it is clear that a party had a change of heart between the time [s]he agreed

to the terms of the settlement and when those terms were reduced to writing." *McCune v. First Judicial Dist. of Pa. Probation Dept.*, 99 F. Supp. 2d 565, 566 (E.D. Pa. 2000). To hold otherwise "would work a significant deterrence contrary to the federal policy of encouraging settlement agreements." *Frompovicz v. Niagara Bottling, LLC*, Civ. No. 18-0054, 2020 WL 6118762, at *4 (E.D. Pa. Oct. 16, 2020) (Beetlestone, J.) (citation omitted). This Court should grant Experian's Motion to Enforce and enforce the terms of Experian's draft agreement, which is attached as Exhibit A.[1]

## II.   BACKGROUND

Plaintiff filed this lawsuit on March 12, 2021, disputing Experian's reporting of an IC System, Inc. tradeline and asserting two claims against Experian under the Fair Credit Reporting Act. *See* Complaint, ECF No. 1 ¶ 41. Plaintiff, through her attorney, and Experian, through its attorney, settled the matter in principle over a telephone call on May 12, 2021. Following the call, Brent Vullings, counsel for Plaintiff, emailed the undersigned: "Mike, Per our telephone conversation today, the Plaintiff will accept [an agreed-upon price][2] and deletion of the tradelines at issue to settle the matter." *See* Ex. A (05/12/2021 Vullings Email). Approximately one week later, Mr. Vullings notified the Court of this development, writing, "Your Honor: Kindly be advised the above referenced matter has been recently settled as to Defendant Experian Information Solutions, Inc. only. We are waiting for circulation of the necessary paperwork in order to finalize the settlement." *See* Notice of Settlement, ECF No. 17.

---

[1] The exhibits referenced herein are attached to the simultaneously filed Declaration of Michael Gallagher ("Gallagher Declaration"). The Gallagher Declaration also contains additional evidence supporting this Motion.

[2] The price of the settlement is confidential information and is contained in an unredacted copy of the draft settlement agreement, which will be filed under seal if the Court grants Experian's Consent Motion for Leave to File Under Seal. *See* Ex. A (Settlement Agreement); *see also* Motion for Leave to File Under Seal, ECF No. 31.

The undersigned circulated a draft settlement agreement to Mr. Vullings on May 17, 2021. *See* Ex. A (05/17/2021 Gallagher Email). Two weeks later, Mr. Frank Caligiuri, a paralegal at Mr. Vullings's firm, returned the settlement agreement and release executed by Plaintiff. *See* Ex. B (06/02/2021 Caligiuri Email). That version of the agreement, however, differed from what Experian sent to Plaintiff; Plaintiff made minor changes to the agreement. *See* Ex. C (06/07/2021 Gallagher Email); *see also* Ex. G (Red-Line Agreement).

Out of the fourteen paragraphs in the agreement, Plaintiff only made edits to two paragraphs. First, she slightly changed the language of the people whose claims she would release (by removing her "heirs, executors, administrators, [and] successors") and the people at Experian whom she would discharge forever (by removing, for example, Experian's "directors" and "employees"). *See* Ex. G, at 1 (Red-Line Agreement). She also added language that limited portions of the agreement to the instant lawsuit or against Experian (e.g., adding language such as "pertain to this lawsuit"). *Id.* at 1–2. Additionally, she inserted a phrase that indicated that the lawsuit was entered into for the purpose of "removal of creditors forever." *Id.* at 2. Her last change was to remove a notary provision that represented that a notary only verified the individual signing the document. *Id.* at 5. A red-line version of the agreement showing changes made by Plaintiff is attached hereto as Exhibit G.

When the undersigned pointed out the changes to Mr. Caligiuri and Mr. Vullings, Mr. Caligiuri responded that "we will look into it and respond." *See* Ex. C (06/07/2021 Caligiuri Email). Over the next two months, Mr. Vullings told the undersigned over the phone that he had trouble getting in touch with Plaintiff because she was experiencing health problems. *See* Gallagher Declaration, ¶ 12.

In late August, the undersigned reached out to Mr. Vullings about the status of the settlement agreement. Mr. Vullings responded, "We believe to be settled with Experian in principle[;] however the Plaintiff has been battling some health issues which has caused a long delay as well as Plaintiff still has issues with the Release that I believe Judge Lloret can help getting finalized." *See* Ex. D (08/26/2021 Vullings Email). Accordingly, Mr. Vullings sought help from this Court in facilitating settlement, as he tried to work with his client and with the defendants in this action to reach a resolution. In mid-September, Mr. Vullings wrote to this Court:

> I am looking for your Honor's assistance with an ongoing impasse with the Plaintiff as to the execution of settlement agreements in this matter. Despite explaining all of the beneficial language, the terms that were requested, and the boilerplate language used in settlement agreements for all parties['] protection, the Plaintiff still does not agree with some of the standard language. The proposed agreements have been negotiated in numerous similar matters over the years with the current defense counsel and the defendants. It was my hope that Your Honor may be able to conduct a Zoom conference over the next few weeks to try and assist with these issues.

*See* Ex. E (09/15/2021 Vullings Email). Mr. Vullings then began a series of status conferences with this Court to facilitate settlement, some of which included the undersigned. *See* Minute Entry, ECF No. 22 (08/27/2021 Pretrial Conference); Minute Entry, ECF No. 24 (09/02/2021 Pretrial Conference); Minute Entry, ECF No. 25 (09/07/2021 Pretrial Conference); Minute Entry, ECF No. 27 (09/20/2021 Pretrial Conference); Minute Entry, ECF No. 28 (09/29/2021 Pretrial Conference); Minute Entry, ECF No. 29 (11/08/2021 Pretrial Conference).

Mr. Vullings continued to try to facilitate settlement between Experian and Plaintiff. In late September 2021, for example, Mr. Vullings asked Experian to remove a blank space in the draft agreement because "[t]he Plaintiff fears that somehow this could be manipulated or changed if left the way it is." *See* Ex. F (09/24/2021 Vullings Email). Experian consented to that change but Plaintiff still would not sign the agreement. *See* Gallagher Declaration, ¶¶ 16–17. Around that

time, the Court entered a dismissal order on September 16, 2021, dismissing the case with prejudice pursuant to Eastern District of Pennsylvania Local Civil Rule 41.1(b).  *See* Dismissal Order, ECF No. 26.

Finally, this Court convened a status conference on November 8, 2021.  *See* Minute Entry, ECF No. 29 (11/08/2021 Pretrial Conference).  At that conference, the Court notified the parties that it would issue an order requesting motions to enforce settlement and would set a briefing schedule for the same.  On November 30, 2021, the Court issued that order, noting that "plaintiff has refused to sign settlement documents."  *See* Court Order, ECF No. 30.

## III.    ARGUMENT

### A.    This Court should, if necessary, modify the dismissal order in this case to grant the motion to enforce.

This Court may lack jurisdiction to rule on this motion without vacating, modifying, or striking the dismissal order, which the Court entered on September 16, 2021.  *See* Dismissal Order, ECF No. 26.  Courts generally lack ancillary jurisdiction to rule on motions to enforce settlement agreements once the case is dismissed.  *See generally Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Bryan v. Erie Cty. Office of Children & Youth*, 752 F.3d 316 (3d Cir. 2014). The Eastern District of Pennsylvania Local Rules, however, provide that Local Rule 41.1(b) dismissal orders "may be vacated, modified, or stricken from the record, for cause shown, upon application of any party served within ninety (90) days of the entry of such order of dismissal." E.D. Pa. Loc. Civ. R. 41.1(b).

"When . . . a motion for relief is filed within 90 days of the order dismissing the case, courts in the Eastern District have modified 41.1(b) Orders where one party has failed to *execute* a written settlement agreement that embodies the agreed upon terms."  *Kozierachi v. Perez*, No. 2:10-cv-7570-CDJ, 2014 WL 137268, at *2 (E.D. Pa. Apr. 7, 2014).  In *Perez*, the Eastern District of

Pennsylvania reopened a case "[b]ecause there are issues surrounding Plaintiff's execution of the settlement agreement and because Defendant filed their motion within 90 days of the 41.1(b) Order." *Id.* So too here. Because there are issues surrounding Ms. Tucker's execution of the settlement agreement and because this motion was brought within 90 days of the dismissal order,[3] this Court should, if necessary, modify the dismissal order to retain jurisdiction over this dispute and rule on this Motion. *See id.*

### B. This Court should enforce Experian's draft settlement agreement because it embodies the material terms agreed upon by Plaintiff and Experian.

"The enforceability of settlement agreements is . . . determined by general principles of contract law." *Pulcinello v. Consolidated Rail Corp.*, 784 A.2d 122, 124 (Pa. Super. Ct. 2001). *See also Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 518 (Pa. Super. Ct. 2009). "Amicable settlement is the judicially preferred manner of resolving disputes, and it is therefore judicial policy to enforce voluntary settlement agreements." *Frompovicz*, 2020 WL 6118762, at *3; *see also Mastroni-Mucker*, 976 A.2d at 518 ("There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant.").

"[T]he test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *See California Sun Tanning USA, Inc. v. Elec. Beach, Inc.*, 369 F. App'x 340, 346 (3d Cir. 2010) (citation omitted) (applying Pennsylvania law). "If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced. If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and

---

[3] The dismissal order was entered on September 16, 2021. *See* Dismissal Order, ECF No. 26. Ninety days from September 16, 2021 is December 15, 2021.

enforce, such an agreement must be set aside." *Commerce Bank/Pa. v. First Union Nat'l Bank*, 911 A.2d 133, 145 (Pa. Super. Ct. 2006) (citation omitted) (enforcing unsigned settlement agreement). A party's signature on an agreement objectively manifests that party's assent to terms. *See Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 223 (3d Cir. 2008) (holding that a party's signature "manifested his assent" to contractual terms); *GM Holdings, LLC v. MCOM Fin. Sols., Inc.*, No. 2198, 2009 WL 5467978 (Pa. Ct. Com. Pl., Philadelphia, Dec. 31, 2009) ("This manifestation of assent between the parties can be seen in the signed contract.").

Here, the parties clearly reached an agreement to settle this case. First, the parties reached an agreement to settle the case in principle: an agreed-upon payment to Plaintiff and removal of the IC System tradeline in exchange for a release of claims in settling the lawsuit. *See* Ex. A (05/12/2021 Vullings Email).[4] "Retiring any lingering doubt on the issue" is Plaintiff's Notice of Settlement filed with the Court. *See* Notice of Settlement, ECF No. 17; *California Sun*, 369 F. App'x at 347 (holding that a notice of settlement filed by the party "[r]etir[ed] any lingering doubt on the issue" of whether the parties evidenced "mutual assent and intention to be bound by the material terms of the contemplated agreement").

Even more compellingly, Plaintiff herself signed Experian's draft agreement, "manifesting [her] assent" to its material terms. *See Morales*, 541 F.3d at 223 (holding that a party's signature "manifested his assent" to the contractual terms); Ex. B (Tucker Executed Agreement). While she made minor changes to the document, all changes but one were to non-material terms. For

---

[4] A court may consider settlement discussions when deciding a motion to enforce. While settlement discussions are generally inadmissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," they are admissible "for another purpose." *See* Fed. R. Evid. 408. One such permissible purpose is to prove the existence and terms of an agreement. *See Palmer v. Wal-Mart Stores East, L.P.*, No. 1:19-cv-0372, 2021 WL 1297835, at *2 (W.D. Pa. Apr. 7, 2021) ("Offering evidence to prove the existence of an agreement to settle a claim (or a portion of a claim) is a purpose other than to establish liability on a disputed claim and, therefore, outside of Rule 408's proscription of admissibility.").

example, in her first change, she removed language about releasing claims on behalf of her "heirs, executors, administrators, and successors," but still released claims on behalf of her "assigns." *See* Ex. G, at 1 (Red-Line Agreement). She also changed the people from Experian whom she would discharge, choosing to discharge Experian's "agents, servants, officers, employees, attorneys," but not its "directors . . . shareholders, parents, subsidiaries, affiliates . . . successors, and assigns." *Id.* Plaintiff further removed a notary block that indicated that the notary verified "only the identity of the individual who signed the document . . . and not the truthfulness, accuracy or validity of that document." *Id.* at 5. Plaintiff's minor changes to non-material terms do not change the fact that, by signing, she manifested her assent to the draft agreement's material terms. *See Luber v. Luber*, 614 A.2d 771, 773–74 (Pa. Super. Ct. 1992) (rejecting argument that "there must be a meeting of the minds on the boiler-plate language" for an agreement to be enforceable); *Compu Forms Control, Inc. v. Altus Grp., Inc.*, 574 A.2d 618, 623 (Pa. Super. Ct. 1990) (holding that a settlement agreement was enforceable even though the parties disagreed over a term which was not essential); *see also Maya Swimwear Corp. v. Maya Swimwear, LLC*, 855 F. Supp. 2d 229, 236–37 (D. Del. 2012) ("The court also notes that a written settlement document will necessarily contain additional, boilerplate and conventional settlement language, not specifically addressed by the parties. The inclusion of such language does not mean that essential terms remained outstanding or a counteroffer was made. A settlement agreement will be enforceable so long as it contains all essential terms, i.e., it contains the heart of the agreement.") (citations omitted). Indeed, Plaintiff only made changes to paragraphs 1 and 2 of the agreement. She did not change any substance of the remaining 12 paragraphs—paragraphs 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14.

Plaintiff tried to add one material term when she signed the agreement: that the agreement was entered into for the purposes of "removal of creditors forever." This term, however, directly

contradicts the bargain that Plaintiff and Experian reached. Experian agreed to remove a single tradeline from Plaintiff's Experian consumer file, not "removal of creditors forever." And Experian and Plaintiff never discussed the "removal of creditors forever" as a potential term. *See* Gallagher Declaration, ¶ 10. Plaintiff cannot now add an additional term that fundamentally changes the bargain the parties reached. "Permitting parties to void settlement agreements on a whim, because the agreement becomes unpalatable or the parties become greedier, would work a significant deterrence contrary to the federal policy of encouraging settlement agreements." *Frompovicz*, 2020 WL 6118762, at *4 (citation omitted). Plaintiff's addition of this term "comes too late, the bargain had already been struck." *McCune*, 90 F. Supp. 2d at 566.

That Plaintiff has subsequently refused to sign the agreement is of no consequence. Courts routinely enforce draft settlement agreements against parties who refuse to sign them when those agreements embody the material terms between the parties. *See Ismail v. Interstate Resources, Inc.*, 842 F. App'x 821, 824 (3d Cir. 2021) (holding that one party's "failure to sign the settlement documents does not invalidate the settlement agreement. . . . Here, the settlement documents were exchanged to memorialize the terms of an already-reached agreement, and [the plaintiff's] obligation to sign the documents was part of what he had already agreed to do"); *Perez*, 2014 WL 1378268, at *3 ("Plaintiff has not executed the settlement agreement. Courts in the Eastern District have granted motions to enforce unsigned settlement agreements when there is no dispute over the terms of the agreement."); *Buchanan v. West Whiteland Twp.*, No. 08-cv-462, 2009 WL 879038, at *4 (E.D. Pa. Mar. 31, 2009) (enforcing a settlement agreement "as written" when plaintiff refused to sign the agreement); *McCune*, 99 F. Supp. 2d at 565–66 (granting motion to enforce settlement when "Plaintiff did not sign the documents and would not discuss the matter with her

attorney").  This Court should enforce Experian's draft settlement agreement because it "contains the material terms agreed upon."  *Perez*, 2014 WL 1378268, at *3.[5]

## IV.  CONCLUSION

For the foregoing reasons, this Court should grant Experian's Motion to Enforce Settlement Agreement and enforce the terms of Experian's draft Settlement Agreement, which is attached as Exhibit A.

Dated:  December 7, 2021     Respectfully submitted,

        /s/ *Michael B. Gallagher*
        Michael B. Gallagher (admitted
        *pro hac vice*)
        Pa. Bar No. 324361
        JONES DAY
        500 Grant Street, Suite 4500
        Pittsburgh, PA 15219
        Telephone: (412) 391-3939
        Fax: (412) 412-394-7959
        Email: mgallagher@jonesday.com

        Mohammad A. Ghiasuddin
        Pa. Bar No. 83925
        MARGOLIS EDELSTEIN
        The Curtis Center, Suite 400E
        170 S Independence Mall W
        Philadelphia, PA 19106
        Telephone: (215) 931-5802
        Fax: (215) 922-1772
        Email: mghiasuddin@margolisedelstein.com

        *Attorneys for Experian Information Solutions, Inc.*

---

[5] If the Court does not enforce the draft settlement agreement in its entirety, it should at least enforce all terms of the draft agreement which Plaintiff did not dispute:  paragraphs 3–14.  Such a settlement should also contain a release of claims against Experian.  "Removal of creditors forever," however, cannot be part of the agreement because it was never discussed and it directly contradicts the agreement the parties entered into.  *See, e.g.*, Gallagher Declaration ¶ 10.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on this 7th day of December, 2021. Notice of this filing will be sent to all counsel of record via the Court's electronic filing system.

Respectfully submitted,

*/s/ Michael B. Gallagher*
*Counsel for Defendant Experian*